**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 1:21-cv-00873-RC |
| ILLUMINA, INC. AND GRAIL, INC., | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO TRANSFER VENUE**
**PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................2

      A.    The Parties and the Proposed Transaction ..................................................2

      B.    Procedural History ......................................................................................4

ARGUMENT ........................................................................................................................4

I.      VENUE IS PROPER IN THE SOUTHERN DISTRICT OF
CALIFORNIA ..........................................................................................................4

II.     PRIVATE AND PUBLIC INTEREST FACTORS FAVOR TRANSFER ............5

      A.    The Majority of Public and Private Interest Factors Weigh in Favor
of Transfer ..................................................................................................6

      B.    Congestion of the Courts and Familiarity with Governing Law Are
Neutral .......................................................................................................11

      C.    The FTC's Choice of Forum Should Be Given Little Deference ..............12

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aftab v. Gonzalez*,
597 F. Supp. 2d 76 (D.D.C. 2009) ...............................................................12

*Bader v. Air Line Pilots Ass'n, Int'l*,
63 F. Supp. 3d 29 (D.D.C. 2014) ................................................................10

*Beall v. Edwards Lifesciences LLC*,
310 F. Supp. 3d 97 (D.D.C. 2018) ............................................................6, 7

*Bergmann v. U.S. Dep't of Transp.*,
710 F. Supp. 2d 65 (D.D.C. 2010) ...............................................................9

*In the Matter of Civil Case Proceedings During the Covid-19 Public Emergency*,
Order of the Chief Judge No. 62 (S.D. Cal Mar. 2, 2021) .........................2, 7

*Express Mobile, Inc. v. Web.com Grp., Inc.*,
2020 WL 3971776 (D. Del. July 14, 2020) ...............................................6, 8

*\*F.T.C. v. Cephalon, Inc.*,
551 F. Supp. 2d 21 (D.D.C. 2008) ..................................................... passim

*\*F.T.C. v. Graco*,
2012 WL 3584683 (D.D.C. Jan. 26, 2012) .............................................10, 14

*F.T.C. v. Lab'y Corp. of Am.*,
2011 WL 1235310 (C.D. Cal. Feb. 25, 2011) ..........................................13, 14

*F.T.C. v. Neovi, Inc.*,
598 F. Supp. 2d 1104 (S.D. Cal. 2008) ...................................................12, 13

*F.T.C. v. Qualcomm Inc.*,
411 F. Supp. 3d 658 (N.D. Cal. 2019) .......................................................13

*\*Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*,
856 F. Supp. 2d 186 (D.D.C. 2012) .............................................6, 11, 12, 13

*Fonseca v. Hewlett-Packard Co.*,
2020 WL 4596758 (S.D. Cal. Aug. 11, 2020) ............................................12

*In re Modified Restrictions on Access to Courthouse During the COVID-19 Pandemic*, Standing Order No. 21-20 (D.D.C. Apr. 2, 2021) ..................................7

*In re Fourth Extension of Authorization for Use of Video*
   *Teleconferencing*,
   Standing Order No. 21-1414 (D.D.C. Mar. 16, 2021) .................................................7

*\*Mazzarino v. Prudential Ins. Co. of Am.*,
   955 F. Supp. 2d 24 (D.D.C. 2013) ................................................................4, 5, 9, 14

*McClamrock v. Eli Lilly & Co.*,
   267 F. Supp. 2d 33 (D.D.C. 2003) ..............................................................................10

*Reiffin v. Microsoft Corp.*,
   104 F. Supp. 2d 48 (D.D.C. 2000) ..............................................................................10

*Siegler v. Sorrento Therapeutics, Inc.*,
   2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) ...............................................................12

*United States v. H & R Block, Inc.*,
   789 F. Supp. 2d 74 (D.D.C. 2011) ..............................................................................14

*Virts v. Prudential Life Ins. Co.*,
   950 F. Supp. 2d 101 (D.D.C. 2013) ..............................................................................9

**Statutes & Rules**

15 U.S.C. § 53(b)(2) .............................................................................................................5

28 U.S.C. § 1391(b)(1) .........................................................................................................5

28 U.S.C. § 1404(a) ..................................................................................................... passim

Fed. R. Civ. P. 45(c) .........................................................................................................8, 9

Defendants Illumina, Inc. ("Illumina") and GRAIL, Inc. ("GRAIL") (collectively, "Defendants") respectfully submit this memorandum in support of their Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of California.

**PRELIMINARY STATEMENT**

This case centers on a proposed transaction between two companies headquartered in California.  All relevant events related to the proposed transaction occurred in California.  All expected party witnesses are located in California.  The majority of third party witnesses are also located in California.  Defendants have strong ties to California, and the transaction will have cognizable effects in the state.  The Court's ultimate ruling on the Federal Trade Commission's action here will determine the future of two California companies.  In contrast, the Federal Trade Commission ("FTC") alleges no connection between this case and the District of Columbia.

California is a more convenient forum to hear this dispute.  Defendants and the FTC (together, the "Parties") anticipate holding an in person preliminary injunction hearing (which will function as a trial on the merits) in July or August 2021.  Conducting a hearing with live witnesses is preferable to having the hearing remotely, particularly because it enhances the ability of the trier of fact to make credibility determinations that will be vital in this case.  An in person hearing is far more likely in California.  Not only will a California hearing dramatically reduce air travel and hotel occupancy, a recent order from the Southern District of California has made clear that "[b]eginning on March 8, 2021, the Judges of this Court . . . may conduct in-

person proceedings . . . in . . . civil cases."[1]  It is counsel's understanding that in person civil proceedings are currently being held in the Southern District of California, and that none have been held in the District of Columbia this year.  In fact, assuming current COVID-19 travel restrictions remain in place, it may be challenging, if not impossible, for out of state witnesses to appear in person before this Court at all.

The FTC has not articulated any basis for litigating this case in this Court.  The FTC is a federal agency, with lawyers and offices around the country, including in California.  The FTC routinely litigates cases in California and is capable of doing so in this case.  Because this case has no meaningful connection to this District, the FTC's choice of forum is not entitled to deference.

Defendants respectfully request that the Court transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  Defendants have conferred with the FTC, which intends to oppose the motion.

## **BACKGROUND**

A.   The Parties and the Proposed Transaction.

Illumina is a leading provider of sequencing products for genetic and genomic analyses.  Its mission is to improve human health by unlocking the power of the genome. Illumina is headquartered in San Diego, California, with two campuses in San Diego and two other offices in Northern California—a commercial office in Foster City and a manufacturing, research and development office in Hayward.  (Schwillinski Decl. ¶¶ 3–4.[2])  About 65% of

---

[1] *In the Matter of Civil Case Proceedings During the Covid-19 Public Emergency*, Order of the Chief Judge No. 62 (S.D. Cal Mar. 2, 2021).

[2] Citations in the form "Schwillinski Decl." are to the Declaration of Roland Schwillinski dated April 2, 2021, submitted herewith.

Illumina's global workforce works in San Diego or the Bay Area.  In addition to these California offices, Illumina has two other commercial offices in the United States—neither of which are in the District of Columbia.  (*Id.* ¶ 4.)  The Illumina employees who were involved in the relevant negotiations regarding the transaction and any documents pertaining to the transaction are located in California. (*See id.* ¶¶ 5–6.)

Illumina founded GRAIL five years ago in San Diego with the goal of developing an early screening test for multiple cancers.  This test has the potential to revolutionize cancer detection through detecting more than 50 cancers in people with only a blood draw and next-generation sequencing.  GRAIL is headquartered and has its principal place of business in Menlo Park, California.  (Song Decl. ¶ 3.[3])  The majority of GRAIL's employees and all of the executives relevant to the transaction are located in California.  (*Id.* ¶ 7.)  GRAIL has a small office in the District of Columbia.  (*Id.* ¶ 5.)  That office has less than ten employees, none of whom were involved in the acquisition negotiations, and the activities of that office, which focus on government and regulatory affairs, are not implicated in the Complaint.  (*Id.* ¶¶ 5–6.)

On September 20, 2020, Defendants entered into an agreement between the two California companies, through which Illumina would acquire GRAIL and bring its cancer screening test to market.  (Song Decl. ¶ 6; Schwillinski Decl. ¶ 5.)  The primary decisionmakers were Illumina's President and CEO Francis deSouza and GRAIL's CEO Hans Bishop.  All negotiating parties were present in California during the course of the negotiations.

---

[3] Citations in the form "Song Decl." are to the Declaration of Marissa Lee Song dated April 2, 2021, submitted herewith.

B.      Procedural History.

On March 30, 2021, the FTC filed an administrative complaint challenging

Illumina's proposed acquisition of GRAIL and seeking appropriate relief.  On the same day, the

FTC filed motions for a temporary restraining order and preliminary injunction in this Court to

enjoin Defendants from closing the transaction while the administrative complaint is adjudicated.

The Parties anticipate that the preliminary injunction hearing will be held in person in July or

August 2021.

## ARGUMENT

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought".  28 U.S.C. § 1404(a).  When assessing a Section 1404(a)

motion, courts look to (1) whether the action could have been brought in the proposed transferee

district originally, and (2) whether private and public considerations of convenience and fairness

favor transfer.  *See F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 25 (D.D.C. 2008) (Bates, J.)

(granting transfer).  Because the FTC could have brought this action in the Southern District of

California, the claims arose from events occurring in California, Defendants reside in California,

almost all witnesses are based in California, and considerations of convenience and justice weigh

strongly in favor of transfer, this action should be transferred to the United States District Court

for the Southern District of California pursuant to 28 U.S.C. § 1404(a).

I.      VENUE IS PROPER IN THE SOUTHERN DISTRICT OF CALIFORNIA.

In moving to transfer venue, the threshold inquiry is "whether the action could

have originally been brought in the proposed transferee district".  *Mazzarino v. Prudential Ins.*

4

*Co. of Am.*, 955 F. Supp. 2d 24, 29 (D.D.C. 2013).  Because Defendants are both headquartered in California, this threshold requirement is satisfied.

The FTC's venue provision provides, in relevant part, that "[a]ny suit may be brought where . . . [the] corporation resides or transacts business, or wherever venue is proper under section 1391 of title 28." *See* 15 U.S.C. § 53(b)(2).  And under 28 U.S.C. § 1391(b)(1), a civil action may "be brought in [] a judicial district where any defendant resides, if all defendants reside in the same State".  *See also Cephalon*, 551 F. Supp. 2d at 25 (defendant corporation resided in state where it had its principal place of business).  Illumina is headquartered and has its principal place of business in San Diego, which is in the jurisdiction of the Southern District of California.  (Schwillinski Decl. ¶ 3.)  GRAIL is also a resident of California, as it is headquartered in Menlo Park.  (Song Decl. ¶ 3.)  This civil action could have originally been brought in the Southern District of California because Illumina resides in that judicial district and GRAIL resides in the state of California.

## II.    PRIVATE AND PUBLIC INTEREST FACTORS FAVOR TRANSFER.

The question of whether transfer is appropriate turns on the relative connections of the transferee and transferor courts to the underlying case, the convenience of each forum to the parties and witnesses and the interest of justice.  To make this determination, courts consider private interest factors, such as:  "(1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the locations where the claim arose; (4) the convenience of the parties; (5) the convenience of witnesses; and (6) ease of access to sources of proof."  *Mazzarino*, 955 F. Supp. 2d at 28 (granting motion to transfer to district where defendant's headquarters were located).  Courts also consider public interest factors, including:  "(1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and

transferor courts; and (3) the potential transferee court's familiarity with the governing law."

*Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 193 (D.D.C. 2012)

(quotation omitted).  As discussed below, both the private and public interest factors strongly

favor transfer to the Southern District of California.

      A.     <u>The Majority of Public and Private Interest Factors Weigh in Favor of Transfer.</u>

      The convenience of witnesses and parties, the defendants' preferred forum, the

locations where the claim arose, the local interest in making local decisions regarding local

controversies, and the ease of access to sources of proof all favor transferring this case to the

Southern District of California.

      <u>Convenience of the Witnesses</u>.  Convenience of the witnesses—"[t]he most

critical factor to examine under 28 U.S.C. § 1404(a)"—weighs strongly in favor of transfer.

*Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97, 105–06 (D.D.C. 2018) (granting transfer

to the Central District of California, where key witnesses resided); *see Express Mobile, Inc. v.

Web.com Grp., Inc.*, 2020 WL 3971776, at *3 (D. Del. July 14, 2020) (granting motion to

transfer where "the bulk of non-expert witnesses are more likely to reside in the [transferee

district] than anywhere else, and there might be relevant witnesses who are subject to the

subpoena power of the [transferee court] but not of this Court").  The vast majority of likely

witnesses, including most of the party witnesses the FTC noticed for investigative hearings and

key third parties that are likely to be called as witnesses, reside in California.  Conducting this

hearing in the District of Columbia will make it difficult to compel third party witnesses to attend

the hearing in person, cause logistical challenges and greatly inconvenience all witnesses,

especially in light of current COVID-19 travel restrictions and considerations.

The Parties intend to conduct a preliminary injunction evidentiary hearing, which will function as a trial on the merits, in July or August 2021.  Defendants prefer that hearing happen live.  While it may be possible to conduct testimony remotely, "[l]ive testimony is always markedly preferable[,] particularly where the resolution of critical factual issues will likely turn on the credibility of witnesses."  *Beall*, 310 F. Supp. 3d at 106 (granting motion to transfer).  A live hearing is much more likely if this case is transferred to the Southern District of California.  For starters, a recent order issued by the Chief Judge of the Southern District of California permits judges to conduct civil proceedings in person, and it is counsel's understanding that such in person proceedings are currently taking place.  *In the Matter of Civil Case Proceedings During the Covid-19 Public Emergency*, Order of the Chief Judge No. 62 (S.D. Cal Mar. 2, 2021).  Although "limited in-court proceedings are permitted" in this district "when the presiding judge determines, upon request of a party, that an in-person appearance is 'necessary'", it is counsel's understanding that such hearings are disfavored and no such civil hearings have been held this year.  *See In re Fourth Extension of Authorization for Use of Video Teleconferencing*, Standing Order No. 21-14 (D.D.C. Mar. 16, 2021).  This Court's latest Standing Order expands access to the Courthouse for in-person jury trials but otherwise encourages remote proceedings.  *See In re Modified Restrictions on Access to Courthouse During the COVID-19 Pandemic*, Standing Order No. 21-20 (D.D.C. Apr. 2, 2021).

Even if live hearings eventually resume in the District of Columbia, witnesses (most of whom would need to travel from California to Washington, D.C.) would be faced with an array of logistical challenges, including potentially needing to take COVID-19 tests and to quarantine for up to 10 days before and after traveling to the hearing.  It would be far easier and less stressful for witnesses located in California to attend an in person hearing in California than

to travel to the District of Columbia, making an in person hearing more likely in California. (Schwillinski Decl. ¶ 6; Song Decl. ¶ 7.)  In addition, the time difference between this Court and California would likely cause scheduling challenges for putting on live witnesses by remote hearing.  Under these circumstances, it is "appropriate to give slightly greater weight to the possibility of less risk associated with less travel", which would favor a venue where most witnesses reside.  *Express Mobile*, 2020 WL 3971776, at *3–4 (granting motion to transfer case from Delaware to Florida because "vast majority" of employees resided in Florida and "the pandemic has highlighted that there can be risks associated with travel").

Many relevant third party witnesses are located in California.  For example,  a company cited in the Complaint as having relevant evidence (Compl. ¶ 46), is headquartered right outside San Diego and clearly outside this Court's 100-mile range.  *See* Fed. R. Civ. P. Rule 45(c).  Similarly, other third party companies cited in the Complaint as having relevant evidence (Compl. ¶ 46)—from whom Defendants understand the FTC has received documents and testimony—are located in California and may not be able to testify in person at a hearing before this Court.  The FTC's Complaint focuses extensively on these companies and in person testimony from them will be critical to an assessment of the merits of the FTC's claims.  In the absence of being able to have these witnesses attend an in person hearing, the Parties may need to rely on depositions, declarations or affidavits to support their points.  Just as with a remote hearing, declarations or affidavits without live testimony would diminish the Court's ability to judge witness credibility as well as the Parties' ability to cross examine witnesses.

This Court may also not be able to compel any third party witnesses to attend the hearing.  Under the Federal Rules of Civil Procedure, a third party witness can only be required to attend a hearing "within 100 miles of where the person resides, is employed, or regularly

transacts business in person", while a party or a party's officer can also be required to attend a hearing "within the state where the person resides, is employed, or regularly transacts business in person". Fed. R. Civ. P. 45(c)(1). In absence of an order compelling nationwide service of process for the purpose of trial subpoenas, there is a risk that Defendants would be unable to compel witnesses to attend a hearing before this Court.

> Convenience of the Parties and Defendants' Choice of Forum. It is also more convenient for the Parties to litigate this action in California, where Defendants are headquartered and where the majority of Defendants' witnesses reside. Defendants seek to transfer this action to the jurisdiction where Illumina is headquartered and to the same state wherein GRAIL's principal place of business is located. (Schwillinski Decl. ¶ 3; Song Decl. ¶ 3.) This Court has "deemed the locus of a defendant's principal place of business in the transferee district as a valid reason for granting transfer". *Mazzarino*, 955 F. Supp. 2d at 31; *see also Virts v. Prudential Life Ins. Co.*, 950 F. Supp. 2d 101, 106 (D.D.C. 2013) ("[a] defendant's principal place of business in the transferee venue is a 'legitimate reason' for granting a § 1404(a) motion"); *Bergmann v. U.S. Dep't of Transp.*, 710 F. Supp. 2d 65, 74 (D.D.C. 2010) (same).

> The fact that GRAIL has a very small government affairs office in the District of Columbia does not change this assessment. In *Cephalon*, the court granted the defendant's motion to transfer from the District of Columbia to the Eastern District of Pennsylvania, even though the company "maintain[ed] a small government affairs office in Washington, D.C.", because "the majority of the company's 2,000 employees within the United States work[ed] and/or reside[d] [in Pennsylvania]." 551 F. Supp. 2d at 22. Here, as in *Cephalon*, GRAIL's satellite office in the District of Columbia did not engage in any corporate decision-making.

Business plans are created, tests are developed and directives are issued from GRAIL's headquarters in California, where the majority of the company's employees—including GRAIL's leadership—work and reside.  (Song Decl. ¶¶ 6–7.)

Location Where Claims Arose.  "[C]laims 'arise' for purposes of Section 1404(a) in the location where the corporate decisions underlying those claims were made . . . or where most of the significant events giving rise to the claims occurred."  *F.T.C. v. Graco*, No. 11-CV-02239 RLW, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012) (transferring an action seeking to enjoin a merger because all of the operative facts occurred in the transferee jurisdiction).  In *Cephalon*, Judge Bates granted a transfer in part because "[n]one of the negotiations that led to the [agreements] at the heart of this controversy took place in . . . the District."  551 F. Supp. 2d at 26.  Here, the corporate decisions to enter into the merger and all significant events underlying the FTC's claims occurred in California; all relevant decisionmakers were and will be in California.  (Schwillinski Decl. ¶ 5; Song Decl. ¶ 6.)

Local Interest.  There is a strong local interest in litigating this action in the Southern District of California because the underlying claim arose and all relevant events and persons affected are concentrated in California.  *See McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 41–42 (D.D.C. 2003) (granting motion to transfer to North Carolina because the alleged injury occurred in North Carolina to a North Carolina resident); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 n.8 (D.D.C. 2000) (granting motion to transfer to California because the alleged injury took place in California); *Bader v. Air Line Pilots Ass'n, Int'l*, 63 F. Supp. 3d 29, 36–37 (D.D.C. 2014) (granting motion to transfer in part because defendant's "headquarters are located in [the transferee forum] and the disposition of this case could have some impact on its employees").

The decision to enter into the transaction and any future decisions regarding the combined company would be directed from Illumina's headquarters in Southern California. (Schwillinski Decl. ¶¶ 4–5.)  The outcome of this action directly affects employees of Illumina and GRAIL, the majority of whom work and reside in California.  In comparison, there is no local interest in litigating this case in the District of Columbia, a forum divorced from Defendants and the underlying events involved.

Ease of Access to Sources of Proof.  The ease of access to sources of proof weighs in favor of transfer.  It is undisputed that the underlying proposed transaction was negotiated in California, Defendants' corporate records are located in California, and almost all witnesses with relevant information work and reside in California.  (Schwillinski Decl. ¶¶ 4–5; Song Decl. ¶¶ 6–7.)  This factor weighs in favor of transfer.

In sum, the public and private interest factors weigh strongly in favor of transfer because the convenience of the witnesses and the parties, as well as local interests, favor litigating this action in the Southern District of California where the events giving rise to this action occurred.

B.    Congestion of the Courts and Familiarity with Governing Law Are Neutral.

The relative congestion of the transferor court and the potential transferee court is neutral.  "In this district, potential speed of resolution is examined by comparing the median filing times to disposition in the courts at issue", *Fed. Hous. Fin. Agency*, 856 F. Supp. 2d at 194 (citation and quotation omitted), and the potential speed of resolution in both courts is similar, *see* Federal Court Management Statistics, United States District Courts—National Judicial Caseload Profile, 2, 69 (2020),

11

https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.[4]  The Southern District of California's familiarity with the governing law is also neutral, as federal courts are presumed to be "equally familiar" with federal law.[5]  *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009).  These factors do not weigh for or against transfer and, thus, do not disturb the strong weight of the preceding factors in favor of transfer.

  C. <u>The FTC's Choice of Forum Should Be Given Little Deference.</u>

    In light of the strength of the factors weighing in favor of transfer—and the weakness of any argument that this California-based action should be litigated in the District of Columbia—little deference (if any) should be accorded to the FTC's choice of forum.

    Courts may afford deference to a plaintiff's choice of forum when "plaintiffs have chosen their home forum *and many of the relevant events occurred there*."  *Fed. Hous. Fin. Agency*, 856 F. Supp. 2d at 192 (emphasis added) (citation and quotation omitted).  No deference is warranted when the plaintiff's choice of forum lacks any meaningful ties to the particular controversy.  *See Cephalon*, 551 F. Supp. 2d at 26 (granting little deference to FTC's forum choice in District of Columbia because of lack of meaningful connection to the underlying controversy).

---

 [4] The median time from filing to disposition in civil cases for the twelve months preceding September 30, 2020 was 5.8 months in the District of Columbia and 6.0 months in the Southern District of California.  *See id.*

 [5] The Southern District of California also has firsthand experience with technology-related antitrust cases, *see, e.g.*, *Fonseca v. Hewlett-Packard Co.*, No. 19CV1748-GPC-MSB, 2020 WL 4596758 (S.D. Cal. Aug. 11, 2020) (claims alleging antitrust conspiracy); *Siegler v. Sorrento Therapeutics, Inc.*, No. 318CV01681GPCNLS, 2019 WL 3532294 (S.D. Cal. Aug. 2, 2019) (attempted monopolization), as well as claims brought by the FTC, *see F.T.C. v. Neovi, Inc.*, 598 F. Supp. 2d 1104 (S.D. Cal. 2008) (unfair business practices).

In *Cephalon*, Judge Bates observed that the FTC's preferred forum in the District of Columbia did not deserve deference because there were no meaningful ties to the forum apart from the fact that the FTC's headquarters were located there, as was a small office maintained by the defendant. *Id.* at 26–27 ("Here, apart from the fact that many of the FTC's prosecuting attorneys are located in [the District of Columbia], there are no meaningful ties between the District of Columbia and the events (or parties) that gave rise to this action."). Consequently, the court determined that antitrust enforcement cases brought by the FTC in the District of Columbia, like the case before this Court, "may be transferred when the case lacks any real connection to the District". *Id.* at 27.

Similarly, in *Federal Housing Finance Agency*, the court found that the federal agency plaintiff's choice of forum in the District of Columbia was "entitled to little deference", despite the fact that the agency was headquartered there, because "the factual nexus between this case and the District of Columbia ends there", as the underlying claims and defendant had no relation to the District of Columbia. 856 F. Supp. 2d at 192. The court explained that "[m]ere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative of whether the plaintiffs' choice of forum [in the District of Columbia] receives deference." *Id.* (citation and quotation omitted).

Here, too, this action has no significant connection to the District of Columbia outside of the location of the FTC's headquarters and a small office maintained by GRAIL (which, like in *Cephalon*, is a small, government affairs-focused office). (Song Decl. ¶ 5.) Even the FTC's connection is weakened, as the FTC has regional offices in Los Angeles and San Francisco and regularly litigates actions across California. *See, e.g. Neovi,.*, 598 F. Supp. 2d 1104 (litigating in Southern California); *F.T.C. v. Lab'y Corp. of Am.*, No. SACV 10-1873 AG

13

MLGX, 2011 WL 1235310 (C.D. Cal. Feb. 25, 2011) (litigating in Central California); *F.T.C. v. Qualcomm Inc.*, 411 F. Supp. 3d 658 (N.D. Cal. 2019) (litigating in Northern California).

Because the FTC is alleging nationwide harm, the FTC must concede that the alleged harm has no specific connection to the District of Columbia. *See Graco*, 2012 WL 3584683, at *5 (granting motion to transfer and holding that the "broad assertion" of nationwide harms "further establishes that the District of Columbia has no meaningful connection to this action"); *see also Cephalon*, 551 F. Supp. 2d at 28 ("[T]he mere fact that the District of Columbia is the nation's capital does not mean that decisions from this Court have any additional nationwide effect beyond that of other district courts.").

This case is distinguishable from *United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 80 (D.D.C. 2011), where the DOJ identified a factual connection to the District of Columbia, including potential fact witnesses in the District. The District of Columbia has no connection to the underlying claims or the key party or third party witnesses. (Schwillinski Decl. ¶ 5; Song Decl. ¶ 6.) Accordingly, the FTC's choice of forum is entitled to little deference, and the weight of Defendants' preferred choice of forum is strengthened. *See Mazzarino*, 955 F. Supp. 2d at 31 ("In addition, the weight of a defendant's choice of forum may be strengthened when the weight of the plaintiff's choice is comparatively weak.") (citation and quotation omitted).

On balance, both private and public interest considerations weigh strongly in favor of transfer. Thus, in the interest of convenience and judicial economy, the Court should order a transfer to the Southern District of California.

## **CONCLUSION**

For the foregoing reasons, this Court should transfer this action to the United States District Court for the Southern District of California.


Dated: April 2, 2021                                   Respectfully submitted,

                                                        /s/ Preston Burton
                                                       Preston Burton (D.C. Bar No. 426378)
                                                       Veena Viswanatha (D.C. Bar No. 1022442;
                                                       admission pending)
                                                       BUCKLEY LLP,
                                                       2001 M Street NW, Suite 500
                                                       Washington, DC 20036
                                                       (202) 349-8000
                                                       vviswanatha@buckleyfirm.com
                                                       pburton@buckleyfirm.com

                                                       Christine A. Varney (D.C. Bar No. 411564)
                                                       Richard J. Stark (D.C. Bar No. MI0010)
                                                       David R. Marriott, (*pro hac vice* pending)
                                                       J. Wesley Earnhardt (*pro hac vice* pending)
                                                       Sharonmoyee Goswami (*pro hac vice*
                                                       pending)
                                                       CRAVATH, SWAINE & MOORE LLP
                                                       Worldwide Plaza
                                                       825 Eighth Avenue
                                                       New York, NY 10019
                                                       (212) 474-1000
                                                       cvarney@cravath.com
                                                       rstark@cravath.com
                                                       dmarriott@cravath.com
                                                       wearnhardt@cravath.com
                                                       sgoswami@cravath.com

                                                       *Attorneys for Defendant*
                                                       *Illumina, Inc.*

Michael G. Egge (D.C. Bar No. 432755)
Marguerite M. Sullivan (D.C. Bar No. 497894)
Roman Martinez (D.C. Bar No. 1001100)
Anna M. Rathbun (D.C. Bar No. 1002562)
Carla Weaver (D.C. Bar No. 1034327)
LATHAM & WATKINS LLP,
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Alfred C. Pfeiffer (admitted *pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Attorneys for Defendant*
*GRAIL, Inc.*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7(m), the undersigned certifies that the parties have conferred about the contents of this motion and were unable to reach agreement.

/s/ Preston Burton_____

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 2, 2021, the foregoing document was served on all attorneys of record via the Court's CM/ECF system.

/s/ Preston Burton_____
Preston Burton